UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MMOJA AJABU, Plaintiff, | ) | |
| v. | ) | No. 1:23-cv-01767-JPH-MJD |
| SAM'S EAST, INC., Defendant. | ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Mmoja Ajabu alleges that a Sam's Club employee inappropriately touched him for the purpose of sexual gratification while Mr. Ajabu shopped for frozen trout at an Indianapolis Sam's Club run by Sam's East, Inc. When the situation wasn't resolved to his satisfaction, Mr. Ajabu threatened one Sam's Club employee and spit on another. Sam's Club then informed Mr. Ajabu that he was banned from the premises. In response to these events, Mr. Ajabu brings claims against Sam's Club for assault and battery and breach of his Sam's Club membership contract. Defendant Sam's East, Inc. has filed a motion for summary judgment. Dkt. [14]. For the reasons below, that motion is **GRANTED**.

## I. Facts and Background

Because Defendant has moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). But

"where a reliable videotape clearly captures an event in dispute and blatantly contradicts one party's version of the event so that no reasonable jury could credit that party's story, a court should not adopt that party's version of the facts for the purpose of ruling on a motion for summary judgment." *McCottrell v. White*, 933 F.3d 651, 661 n.9 (7th Cir. 2019) (citing *Scott v. Harris*, 550 U.S. 372, 380–81 (2007)).

On August 7, 2023, Sam's Club employee Bradley Burris was restocking open-air freezer units from a cart beside the freezer. Ex. A at 10:55–11:10 (incident video). Mr. Ajabu approached the freezers and, as Mr. Burris turned to grab more items from the cart, moved in between the cart and the freezer. *Id.* at 11:35–11:49. When Mr. Burris turned back to the freezer, he saw Mr. Ajabu and paused as Mr. Ajabu bent over and reached into the freezer. *Id.* at 11:50. Once Mr. Ajabu stood back up, Mr. Burris sidestepped between the cart and Mr. Ajabu to restock another part of the freezer. *Id.* at 11:55. As Mr. Burris passed, Mr. Ajabu bent over again, and their backsides bumped:



*Id.* at 11:57. Mr. Burris continued moving past Mr. Ajabu to restock the freezer. *Id.* at 11:57–12:00.

Mr. Ajabu confronted Mr. Burris about the contact and Mr. Burris apologized. Dkt. 1-1 ¶ 20; *see also* Ex. A at 12:23–12:31. Mr. Ajabu then told Sam's Club manager Dexter McDonald that Mr. Burris touched him inappropriately. Dkt. 16-3 ¶ 4. After reviewing the footage, Mr. McDonald told Mr. Ajabu that the surveillance video did not show that Mr. Burris intentionally touched him. *Id.* ¶ 6. Mr. Ajabu became angry and threatened to beat up Mr. Burris, so Mr. McDonald escorted Mr. Ajabu to the check-out area. *Id.* ¶¶ 7–9. Team member Tameka Coleman offered to assist Mr. Ajabu while he was checking out. Dkt. 16-4 ¶ 8. In response, Mr. Ajabu asked, "[W]hat would you do if I felt your breast?", and then spit in her face after she informed him that he needed to leave the store. *Id.* ¶¶ 9–11.

Sam's Club told Mr. Ajabu that if he came back to the store, he would be trespassing. Dkt. 8 ¶ 32. Sam's Club's Terms and Conditions provide that it can revoke a membership without cause at any time. Dkt. 16-3 ¶ 13.

Mr. Ajabu sued Sam's Club, bringing an assault and battery claim based on Mr. Burris's contact and a breach of contract claim based on Sam's Club banning him from the store. Dkt. 1-1. Sam's East moved for summary judgment. Dkt. 15.

## II.
## Summary Judgment Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. If no reasonable juror could find for one side, summary judgement should be granted against that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III.
## Analysis

### A. Assault and battery claim

Sam's East argues that it's entitled to summary judgment because Mr. Ajabu has not designated evidence that Mr. Burris intended to make harmful or offensive contact with Mr. Ajabu. Dkt. 15 at 4. Mr. Ajabu argues that Mr. Burris battered him when the two bumped backsides. Dkt. 19 at 2–4.

Since both parties cite Indiana tort law, dkts. 15; 19; 22; 23, the Court applies Indiana law to this claim. *See BancorpSouth, Inc. v. Fed. Ins. Co.*, 873 F.3d 582, 586 (7th Cir. 2017) (using state law that both parties agreed applied). Absent a controlling decision from the Indiana Supreme Court, the Court does its best to predict how that court would rule on the issues of law. *Mashallah,*

*Inc. v. West Bend Mutual Insurance Co.*, 20 F.4th 311, 319 (7th Cir. 2021). In doing so, the Court may consider decisions from the Indiana Court of Appeals. *See id.*

Under Indiana law, "an actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results." *Mullins v. Parkview Hosp., Inc.*, 865 N.E.2d 608, 610 (Ind. 2007). Assault also requires intent and "is effectuated when one acts intending to cause a harmful or offensive contact with the person of the other or an imminent apprehension of such contact." *Cullison v. Medley*, 570 N.E.2d 27, 30 (Ind. 1991).

Here, Mr. Ajabu designates as evidence his affidavit in which he states under oath that Mr. Burris groped him "by rubbing his buttocks against mine in order to feel my buttocks," and that Mr. Ajabu could "tell by the manner in which [Mr.] Burris rubbed his buttocks against mine that this was an intentional groping." Dkt. 20 ¶ 11. The surveillance video, however, completely contradicts Mr. Ajabu's testimony. It shows that Mr. Burris had been restocking the freezer for over ten minutes when Mr. Ajabu approached the freezer and began looking at some frozen fish. Ex. A at 0:00–11:25. Mr. Burris saw Mr. Ajabu initially leaning over the freezer and waited until Mr. Ajabu stood up to walk past him. *Id.* at 11:50–11:52. Mr. Burris then sidestepped behind Mr. Ajabu, with his back toward Mr. Ajabu. *Id.* at 11:55.

Mr. Ajabu then bent forward as Mr. Burris passed behind him, causing backside-to-backside contact which lasted for about one second. *Id.* at 11:56-58. So, the video shows that Mr. Burris tried to avoid touching Mr. Ajabu when he passed him, and that their brief contact was accidental and not intentional.

Mr. Ajabu's statements about Mr. Burris's intent, dkt. 20, are therefore "blatantly contradicted" by the video evidence. *See Williams v. Norfolk S. Corp.*, 919 F.3d 469, 471 (7th Cir. 2019) (holding that when plaintiff's testimony was blatantly contradicted by video evidence it could not be adopted as facts to consider in ruling on motion for summary judgment). Based on the video evidence, no reasonable jury could believe Mr. Ajabu's sworn statements that Mr. Burris:

- "waited until I leaned into the refrigerator and stepped behind me and groped me by rubbing his buttocks against mine in order to feel my buttocks";
- "used his buttocks to feel me up the same way an individual uses fingers to grope someone"; and
- "took advantage of the incident in which our buttocks touched for his own homosexual gratification".

Dkt. 20 at 2 ¶¶ 10-14. Mr. Ajabu's testimony that the contact was intentional therefore does not show a triable issue of fact on this issue. *See Mullins*, 865 N.E.2d at 611 (holding that although defendant "may indeed have touched [plaintiffs] in a harmful and offensive manner without permission, as the[y]

claim," plaintiffs must also show that defendant "acted *intending* to cause a harmful or offensive contact" with plaintiffs); *Donovan v. Hoosier Park, LLC*, 84 N.E.3d 1198, 1210 (Ind. Ct. App. 2017) ("Based on the surveillance video, there is no evidence that [defendant-]employees acted with any intent to cause harmful or offensive contact to [plaintiff].").

Therefore, the Court **grants** Sam's Club's motion for summary judgment on Mr. Ajabu's assault and battery claim.[1] *See Scott*, 550 U.S. at 380.

**B. Breach of contract claim**

Sam's East argues that it's entitled to summary judgment on Mr. Ajabu's breach of contract claim because the Terms and Conditions of the membership contract allowed it to revoke Mr. Ajabu's membership without cause at any time. Dkt. 15 at 7. Mr. Ajabu argues that Sam's East breached its contract with him when it banned him from its stores because it never informed him that his membership was revoked. Dkt. 19 at 4–5.

Since Sam's Club's Terms and Conditions provide that Arkansas law governs, dkt. 16-3 ¶ 14, and both parties cite Arkansas law in their briefs, dkts. 15; 19; 22; 23, the Court applies Arkansas law to the breach of contract claim. *See Allen v. Great Am. Rsrv. Ins. Co.*, 766 N.E.2d 1157, 1162 (Ind. 2002) ("Indiana choice of law doctrine favors contractual stipulations as to governing law."); *BancorpSouth, Inc.*, 873 F.3d at 586. Absent a controlling decision from

[1] The Court therefore does not consider Sam's Club's alternative argument that Mr. Ajabu consented to the touching.

the Arkansas Supreme Court, the Court does its best to predict how that court would rule on the issues of law. *Mashallah, Inc.*, 20 F.4th at 319. In doing so, the Court may consider decisions from the Arkansas Court of Appeals. *See id.*

Here, the contract provides that "Sam's Club reserves the right to accept, refuse, or revoke a customer's membership with or without cause at any time at its sole discretion." Dkt. 16-3 ¶ 13. Sam's Club employees banned Mr. Ajabu from the store in response to Mr. Ajabu's threatening one employee, *id.* ¶ 7, and spitting on another, dkt. 16-4 ¶ 11. Under the Terms and Conditions of the Membership Agreement, Sam's Club was well within its rights to take this action.

Mr. Ajabu resists this conclusion, arguing that he never agreed to the Terms and Conditions and that they are unconscionable. Dkt. 19 at 5. Mr. Ajabu does not dispute, however, that he purchased a Sam's Club membership, dkt. 1-1 ¶ 33, or that he had access to its Terms and Conditions. Dkt. 16-3 ¶ 15. Regardless of whether Mr. Ajabu read or agreed to the Terms and Conditions, he is bound by them. *Jordan v. Diamond Equip. & Supply Co.*, 207 S.W.3d 525, 536 (Ark. 2005) ("Ultimately, [the signor] is bound to know the contents of the contract that he signed."). No jury could reasonably conclude that Sam's Club breached the Membership Agreement by banning Mr. Ajabu from the store in response to his conduct toward Sam's Club employees.

Similarly, there is no basis for a jury to conclude that the Terms and Conditions are unconscionable. As "the party asserting the defense," Mr. Ajabu has the burden of showing that the Terms and Conditions were

unconscionable. *Altice USA, Inc., v. Johnson*, 661 S.W.3d 707, 719 (Ark. Ct. App. 2023). "In assessing whether a particular contract or provision is unconscionable, the courts should review the totality of the circumstances surrounding the negotiation and execution of the contract. Two important considerations are whether there is a gross inequality of bargaining power between the parties and whether the aggrieved party was made aware of and comprehended the provision in question." *State ex rel. Bryant v. R & A Inv. Co.*, 985 S.W.2d 299, 302 (Ark. 1999). Additional factors may include whether the signor benefitted from the contract, if the signor had other options to signing the contract, if the provision was available to the signor to read, and if the provision was clear and unambiguous. *See, e.g.*, *Jordan*, 207 S.W.3d 525, 536 (Ark. 2005) (holding that a contract between equipment leasing company and consumer was not unconscionable based on these factors); *McClure v. City of Mayflower*, 2011 Ark. App. 265 at *7 (Ark. Ct. App. 2011) (similar). Arkansas courts enforce unambiguous contract language that parties have agreed to. *Alltel Corp. v. Sumner*, 203 S.W.3d 77, 80 (Ark. 2005).

Here, it's undisputed that the Terms and Conditions were available on Sam's Club's website for Mr. Ajabu to read, dkt. 16-3 ¶ 15, and that the revocation provision was clear and unambiguous, *id.* ¶ 13. Nor was there a gross inequality of bargaining power because Mr. Ajabu benefitted from a membership since it allowed him to shop at Sam's Club. Dkt. 1-1 ¶¶ 6, 7. Further, Sam's Club does not provide a unique or necessary service. Mr. Ajabu could have found similar services at a different store but chose to sign up for a

membership with Sam's Club. *See Nat'l Union Fire Ins. Co. of Pittsburg v. Guardtronic, Inc.*, 64 S.W.3d 779, 784 (Ark. Ct. App. 2002) (holding that there was no gross inequality of bargaining power when there were competing companies where plaintiff could have acquired similar services); *McClure*, 2011 Ark. App. 265 at *7 (similar).

The totality of the circumstances thus shows that Mr. Ajabu's contract with Sam's Club was not unconscionable or ambiguous, and he has not carried his burden to designate evidence to the contrary. *See Altice USA*, 661 S.W.3d at 719. The Court therefore **grants** Sam's Club's motion for summary judgment on Mr. Ajabu's breach of contract claim. *See Celotex Corp.*, 477 U.S. at 324.

**C. Frivolous litigation warning**

In litigating this case, Mr. Ajabu provided an affidavit, sworn under penalty of perjury, that is directly contradicted by uncontested video evidence. Dkt. 20. Federal Rule of Civil Procedure 11 prohibits a party from presenting a paper to the court for an improper purpose or with factual contentions that do not have, nor likely will have, evidentiary support:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). A factually frivolous affidavit therefore can warrant sanctions under 11(b)(3). *See Stanley v. Wilson*, No. 18-CV-1037-NJR-RJD, 2018 WL 4095775 at *3 (S.D. Ill. Aug. 28, 2018) (imposing monetary fine on pro se plaintiff for raising factually frivolous claim that was unbelievable); *Atkins v. Sharpe*, No. 21-1831, 2021 U.S. App. LEXIS 32203, at *1 (7th Cir. Aug. 11, 2021) (sanctioning plaintiff for factually frivolous complaint).

Although Mr. Ajabu is proceeding *pro se*, he is obligated to comply with Rule 11. Moreover, no litigant needs to be warned that making false statements in support of legal claims is prohibited and may result in adverse consequences. This is especially true for Mr. Ajabu who has previously litigated claims *pro se* in federal court. *See Ajabu v. Harvey*, Case No. 1:18-cv-01243-JMS-MJD (S.D. Ind.). And here, Mr. Ajabu chose to double down on his wholly unsupported factual assertions in response to Sam's Club's well-supported motion for summary judgment. Dkt. 16.

Mr. Ajabu is therefore warned that any further frivolous litigation or violations of Rule 11 will result in the imposition of monetary sanctions and

referral to the Chief Judge for further sanctions, including a bar on filing and litigating cases in this district, without further warning. *See Ramirez v. T.H. Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir. 2016).

## IV.
## Conclusion

Sam's East's motion for summary judgment is **GRANTED**. Dkt. [14]. Final judgment will issue in a separate entry.

**SO ORDERED.**

Date: 8/13/2024

James Patrick Hanlon

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

MMOJA AJABU
P.O. Box 2696
Indianapolis, IN 46206
ajabum12@netzero.net

All electronically registered counsel